224 N.J. Super. 613 (1988)
541 A.2d 233
WILLIAM KANE, PLAINTIFF-APPELLANT,
v.
NATHAN MILIKOWSKY, PROSPECT INDUSTRIES, INC. PROSPECT PURCHASING CORP., JERSEY STEEL DRUM MANUFACTURING CO., AND PHOENIX STEEL CONTAINER CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 27, 1988.
Decided April 25, 1988.
*614 Before Judges GAULKIN, GRUCCIO and D'ANNUNZIO.
Myron D. Milch, attorney for plaintiff.
Hannoch Weisman, attorneys for respondents (Sheldon M. Finkelstein, on the brief).
The opinion of the Court was delivered by D'ANNUNZIO, J.A.D.
Plaintiff was employed as president and chief executive officer of defendant, Prospect Industries, Inc. (Prospect) in September 1982. Prospect is a subsidiary of defendant, Prospect Purchasing Corporation. The other corporate defendants are subsidiaries of Prospect. All corporate defendants are wholly owned by defendant, Nathan Milikowsky and his brother Daniel Milikowsky. Plaintiff was also a member of Prospect's Board of Directors. He was fired in February 1984. Plaintiff testified that he was told that the company could not afford his salary. David Milikowsky testified that he and Nathan were unhappy with plaintiff's performance and that the company needed to cut overhead.
Plaintiff commenced this action seeking damages for wrongful *615 discharge under a variety of legal theories.[1] The only theory of recovery before us is based on Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284 (1985), mod., 101 N.J. 10 (1985). The trial judge ruled against plaintiff and we affirm.
In Woolley, the Court held that "an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." Id., 99 N.J. at 285-286. Plaintiff contends that four memoranda written by him in 1982 and 1983, constitute an employment manual and contain an implied promise that no employee, including the president of the corporation, will be fired without cause. We find it unnecessary to address the applicability of Woolley to a corporate president[2] because in our view the memoranda relied upon by plaintiff do not include an implied promise that employees will be fired only for cause.
The first memorandum, dated October 1, 1982, is not relevant. It is limited to plaintiff's establishment of a management committee on labor relations and identifies the committee members.[3] The third memorandum, dated November 3, 1982, was addressed to non-union employees and was limited to the subject of employee benefits. It addressed holidays, vacations, sick days, salary reviews, incentive bonus and group health and life benefits. The fourth memorandum, dated December 13, 1983, was addressed to all department heads regarding "1982 PERSONNEL PERFORMANCE REVIEWS." It announced that the corporation had developed a performance appraisal *616 procedure which would serve "as the basis for determining employee compensation increases each year." We fail to perceive in those three memoranda, considered individually or as a group, any implied promise not to terminate employment without cause. See Ware v. Prudential Ins. Co., 220 N.J. Super. 135 (App.Div. 1987).
Plaintiff relies primarily on the second memorandum titled Company Rules. It bears the legend "Effective 11/1/82," and is reproduced as an appendix to this opinion. These rules are clearly an attempt to define employee actions which will constitute industrial offenses in the eyes of Prospect and to give notice to employees of the elements of those offenses and the consequences to an employee if he engages in prohibited action. The rules provide no basis for an implied promise not to terminate without cause. Cf. Ware, supra. at 145-146.
In Woolley, that part of the manual relied upon by the Supreme Court was titled "Termination" and contained six numbered sections dealing with termination. The Woolley manual in section III defined "the types of termination" as layoff, discharge due to performance, discharge disciplinary, retirement and resignation. Therefore, the manual in Woolley supported the conclusion that it was intended to be a comprehensive treatment of the subject of employment termination. In the present case, plaintiff's memoranda do not purport to cover comprehensively the subject of termination.
Moreover, Section II of the Woolley manual declared the policy of Hoffman-La Roche to be "to retain to the extent consistent with company requirements, the services of all employees who perform their duties efficiently and effectively." There is no similar undertaking or expression of policy in the Prospect memoranda.
Affirmed.

*617 APPENDIX

COMPANY RULES

PROSPECT INDUSTRIES CORP.

Effective 11/1/82
The following company rules and work policies are developed to ensure the safety, dignity and productivity of every employee.
VIOLATIONS OF COMPANY RULES WILL RESULT IN DISCIPLINARY ACTION.
1st violation will result in a verbal warning to be noted in the employee's personnel file. First violation of rules marked with an asterisk (*) will result in immediate termination.
2nd violation will result in a written warning to be included in the employee's personnel file for the period of eighteen months.
3rd violation will result in a disciplinary layoff for one to five days.
4th violation within any 18 month period will result in discharge.
Disciplinary action will result from the commission of any of the following:
[*]1. Theft, or possession without proper authority of company property or property of another employee.
[*]2. Commission of Crime.
[*]3. Willful abuse or deliberate damage to company property, inclusive of safety equipment, or to the property of another employee.
4. Carelessness resulting in damage, destruction, or delay to work in progress, materials, or company property, tools, equipment, or the property of other employees.
[*]5. Altering or falsifying time card, inventory tickets, schedules or any other company document, or punching the time card of another employee.
[*]6. Fighting on company premises.
[*]7. Possessing, drinking, using or being under the influence of habit-forming drugs, and hallucinogenic drugs or substances such as LSD, Marijuana or alcoholic beverages on company premises at any time.

8. Insubordination. Refusal to obey order of supervision or refusal to perform job assignment.
9. Loitering or wasting time on any of the company premises during working hours or deliberately restricting production or inciting others to do so.

*618 10. Leaving department or plant without permission of supervisor.
11. Concealing or failure to report an error or mistake.
12. Disregard of safety rules or common safety practices, tampering or altering of safety equipment without authority, removal or not replacing equipment guards.
13. Any conduct or action which is disruptive to the normal course of business, at our plant or customer facilities.
14. Use of profane, obscene, or vile language in the presence of other employees, or customers.
15. Smoking or exposing flame in prohibited areas or at prohibited times or the use of other than "safety" matches where such use imperils lives and property, unless authorized by engineering.
16. Doing personal work on company time or with company equipment, or company material, without prior permission from management.
17. Creating or contributing to unsanitary conditions.
18. Sleeping on company property, or in company equipment unless authorized by management.
19. Use of company telephones for personal calls or use of pay stations during working hours without permission from department supervisor.
20. Failure to report personal injuries at once to your supervisor.
21. Eating in non-designated areas or at unauthorized times.
22. Gambling or soliciting bets on company property or company time.
23. Wearing improper clothing which would jeopardize your safety or that of your coworkers, or which presents an unfavorable image as a company representative.
24. Reporting for work without having presented Proof of U.S. Citizenship or documents satisfactory to the U.S. Immigration Service allowing work in the United States.
25. ABSENTEEISM AND TARDINESS ARE COVERED BY THE PLANT POINT SYSTEM.
26. Employees must wear gloves on those jobs determined by the safety committee. Gloves will be supplied by the company and replaced when a damaged pair is presented. (Employees may purchase gloves for $2.00 if they do not have a pair to return.)
27. Riding or allowing riders on company vehicles or equipment without permission.
NOTES
[1] Plaintiff filed a complaint and three amended complaints.
[2] Cf. N.J.S.A. 14A:6-16(1) which provides that a corporate officer appointed by a Board of Directors may be removed by the Board without cause but "without prejudice to his contract rights, if any."
[3] Prospect employed approximately 300 production workers and had 50 employees in sales, managerial and administrative positions.