748 A.2d 1216 (2000)
330 N.J. Super. 162
Albert REYNOLDS, Plaintiff-Appellant,
v.
The PALNUT COMPANY and TransTechnology Corporation, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted March 28, 2000.
Decided April 19, 2000.
*1217 Reppert, Kelly & Wohlgemuth, LLP, Westfield, for plaintiff-appellant (Jerrold J. Wohlgemuth, on the brief).
Collier, Jacob & Mills, P.C., for defendants-respondents (Rosemary S. Gousman, of counsel, Somerset; Ms. Gousman and Lori Ann Schiraldi, on the brief).
Before Judges PRESSLER and KIMMELMAN.
The opinion of the court was delivered by KIMMELMAN, J.A.D.
Plaintiff Albert Reynolds' complaint against defendants alleging (1) age discrimination by reason of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49; and (2) breach of an implied contract whereby warnings were required to be given before termination was dismissed by way of summary judgment following the completion of discovery. We affirm the LAD dismissal but reverse the dismissal of plaintiff's implied contract claim and remand for further proceedings.
Plaintiff was hired by defendant The Palnut Company (Palnut) in 1976 as a press operator and eventually was promoted to the position of second-shift supervisor where he supervised approximately fifty persons including press operators, quality control inspectors, die setters, and toolmakers during the 3:30 p.m. to 11:30 p.m. shift. Palnut manufactured metal fasteners and small parts for use in the automobile assembly process. A press machine was used to stamp out the metal products.
Palnut was originally owned by TRW but, in 1993, it was purchased from TRW by co-defendant TransTechnology Corporation. Palnut management underwent some changes. In particular, Mr. Joe Formoso became vice-president of operations at Palnut in the spring of 1996. TransTechnology retained as director of human resources, Mr. Clifton Holmes, who had worked at Palnut since 1981 in that post. Employees were told to expect change in the direction of the business. According to plaintiff, all employees of Palnut were informed at an early meeting, that if they *1218 did not do their job the way TransTechnology wanted, they would be terminated.
On or about February 4, 1997, problems were detected in the quality of metal fasteners being manufactured and were brought to the attention of Formoso. A substantial portion of the fasteners were out of specification Formoso referred the problem to the quality control inspector and, after an inspection, it was determined that the quality issue had begun on the second shift on which plaintiff was the supervisor. Formoso then met with the president of Palnut concerning the results of the investigation and other quality issues affecting the second shift. On that same day, after the meeting, Formoso called plaintiff into his office and discussed the matter of the defective parts coming from plaintiff's shift. Plaintiff, who was forty-nine years old at the time, was then summarily terminated for "poor work performance." No prior warning had been given to plaintiff.
Formoso then asked Holmes to suggest replacements for plaintiff. Three persons, all long-time employees of Palnut, were suggested. They were aged fifty, forty-nine, and fifty-nine respectively. They were each offered the promotion to second-shift supervisor, but each declined. A replacement for plaintiff was eventually found. He was forty-two years of age. However, the person selected ultimately proved that he was unable to handle the personnel issues on the shift nor could he satisfactorily handle the technical issues. He was removed after six months and one of the persons, aged forty-nine, who had originally been offered the position, changed his mind and became second-shift supervisor. He was the same age as plaintiff.
The motion judge determined, on defendants' motion for summary judgment that plaintiff (1) did not establish a prima facie case of age discrimination and (2) did not establish that the oral employment policy he claimed was breached was an accurate representation of Palnut's actual policy.
We are satisfied that plaintiff's LAD claim should have been dismissed. However, our legal analysis differs somewhat from that of the judge. We find that plaintiff did establish a prima facie case of age discrimination, but he failed to establish that the non-discriminatory reasons defendants offered for firing plaintiff were used as a pretext for discrimination.
The LAD provides, in pertinent part:
It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
a. For an employer, because of the... age, ... of any individual, ... to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment....

[N.J.S.A. 10:5-12(a).]
A plaintiff in an age discrimination case must show that age, as a prohibited consideration, played a role in the decision making process and that it had a determinative influence on the outcome. Miller v. CIGNA Corp., 47 F.3d 586, 597 (3d Cir. 1995). The mechanics of establishing and prevailing with a prima facie case of discriminatory discharge are well set forth in Maiorino v. Schering-Plough Corp., 302 N.J.Super. 323, 346-47, 695 A.2d 353 (App. Div.), certif. denied, 152 N.J. 189, 704 A.2d 19 (1997), where we said:
To establish a prima facie case of age discrimination, a plaintiff must show that "(1) he was a member of the protected class; (2) he was performing the job at the level that met the employer's legitimate expectations; (3) he was discharged; and (4) the employer sought another to perform the same work after the complainant had been removed from the position." Catalane v. Gilian Instrument Corp., 271 N.J.Super. 476, 496-97, 638 A.2d 1341 (App.Div.), certif. *1219 denied, 136 N.J. 298, 642 A.2d 1006 (1994). Once the plaintiff establishes a prima facie case, a presumption is created that the employer unlawfully discriminated against the applicant. Andersen v. Exxon Co., supra, 89 N.J. at 492-93, 446 A.2d 486.
The burden then shifts to the defendant employer to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action. Andersen v. Exxon Co., supra, 89 N.J. at 493, 446 A.2d 486. The defendant employer, however, only carries the burden of production, rather than persuasion, to show a legitimate, nondiscriminatory reason for its action: "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dep't of Community Affairs v. Burdine, supra, 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216 (footnote omitted). The defendant employer need not prove that its proffered reason actually motivated its behavior because throughout this burden shifting model, the burden of proving intentional discrimination always remains with the plaintiff employee. Martinez v. National Broadcasting Co., 877 F.Supp. 219, 228 (D.N.J.1994).
After the defendant employer has sufficiently set forth a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff then has the burden of persuasion to show that the defendant's proffered reason is merely a pretext, i.e., that it was not the true reason for the employment decision. Andersen v. Exxon Corp., supra, 89 N.J. at 493, 446 A.2d 486. A plaintiff may accomplish this by showing that (1) a discriminatory reason more likely motivated the employer than the employer's proffered legitimate reason, or (2) the defendant's proffered explanation is "unworthy of credence." Texas Dep't of Community Affairs v. Burdine, supra, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217.
The trial court found that plaintiff had not established a prima facie case because plaintiff failed to show that defendants replaced him with a candidate sufficiently younger to permit an inference of age discrimination.
In reaching its decision the trial court relied on Bergen Commercial Bank v. Sisler, 157 N.J. 188, 218, 723 A.2d 944 (1999), where the Supreme Court found that in a reverse age discrimination suit, a plaintiff "must conform [his or her] proofs to a `heightened reverse discrimination' formulation." The Sisler court stated that a plaintiff in a reverse discrimination suit must show that "[he or she] was replaced with a candidate sufficiently older to permit an inference of age discrimination. Id. at 218, 723 A.2d 944. The heightened formulation was used because plaintiff Sisler was not a member of a historically disadvantaged class. Ibid.
Because here plaintiff Reynolds asserted a traditional age discrimination claim, the heightened standard utilized in reverse discrimination suits is not applicable. He need not show that he was replaced by someone sufficiently younger. Rather, plaintiff must show that he was a member of a protected class, that he was performing the job at a satisfactory level; that he was discharged, and that the employer sought others to perform the work after the complainant had been removed. Maiorino, supra, 302 N.J.Super. at 346, 695 A.2d 353.
The burden of showing a prima facie case is not onerous. Id. We find that plaintiff established a prima facie case of discriminatory discharge. He was an older worker, qualifying as a number of a protected class. See Greenberg v. Camden County Vocational & Technical Schs., 310 N.J.Super. 189, 201, 708 A.2d 460 (1998) (holding that a forty-eight year old plaintiff was "clearly a member of a protected class"). Plaintiff had been a shift supervisor for twenty years and had received *1220 favorable performance evaluations. Plaintiff was discharged and defendant began searching for replacements.
The prima facie case established by plaintiff created an inference of discrimination. The burden of production then shifted to defendant employer to rebut the prima facie case by articulating some legitimate, non-discriminatory reason[s] for plaintiff's termination. Erickson v. Marsh & McLennan Co., 117 N.J. 539, 550, 569 A.2d 793 (1990); Clowes v. Terminix Int'l., Inc., 109 N.J. 575, 596, 538 A.2d 794 (1988).
In the present case, defendants, Palnut and TransTechnology, satisfied this burden of production. Defendants' proffered reason for plaintiff's termination was "poor work performance," and they offered evidence in the form of testimony and documents to support this claim. The evidence included:
(1) A 1994 performance review of plaintiff by Mr. Schaffernoth (a former Palnut official) indicating that plaintiff was advised to "take charge of his shift."
(2) A 1995 performance review conducted by Mr. Schaffernoth in which plaintiff was cautioned that his work habits were unsatisfactory and there needed to be a "big improvement in the work ethic."
(3) Testimony from plaintiff that he had discussions with Mr. Schaffernoth regarding the facts that plaintiff needed to improve his leadership over the employees on his shift, plaintiff needed to act more like a supervisor, plaintiff needed to be taking his breaks at the designated times and not on his own accord, and that he should not leave the work area during his shift.
(4)Additional testimony concerning warnings plaintiff received about spending too much time during his shift in another department talking to a particular female employee.
(5) Testimony concerning the fact that in 1994 plaintiff was caught viewing an x-rated video in Palnut's conference room.
(6) And finally, testimony and documents concerning plaintiff's responsibility for the production of a defective part during his shift.
Defendants did show, as set forth above, that plaintiff's job was offered to persons aged fifty, forty-nine, and fifty-nine. Such persons rejected the job offer but after an interim replacement proved to be unsatisfactory, the job went to the forty-nine year old individual, the same age as plaintiff.
Once the employer Palnut provided sufficient nondiscriminatory reasons for plaintiff's termination and other evidence rebutting the presumption of discrimination, as it did here, the burden shifted back to plaintiff to prove that "the articulated reason `was merely pretext to mask the discrimination' or was not the true motivating reason for the employment decision." Greenberg, supra, 310 N.J.Super. at 199, 708 A.2d 460 (quoting Kelly v. Bally's Grand, Inc., 285 N.J.Super. 422, 430, 667 A.2d 355 (App.Div.1995)). To survive summary judgment, plaintiff was obligated to show sufficient evidence to support an inference that the employer did not act for its stated non-discriminatory reasons. Kelly, supra, 285 N.J.Super. at 432, 667 A.2d 355.
From our review of the record, we are satisfied that the evidence presented on the motion against plaintiff's position is so one-sided that plaintiff is unable to satisfy a rational fact finder with the legitimacy of his position. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536, 540, 666 A.2d 146 (1995). Plaintiff was unable to point to sufficient evidence that discredited the reasons for his termination as merely a pretext for age discrimination. Greenberg, supra, 310 N.J.Super. at 200, 708 A.2d 460. See also Fuentes v. Perskie, 32 F.3d 759, 764-65 (3d Cir.1994). Thus, a reasonable fact finder could not have ruled in plaintiff's favor. Brill, supra, 142 N.J. at 523, 666 A.2d 146. The dismissal of the First Count of his complaint by way of summary judgment was proper.
*1221 Plaintiff next claims that the trial court erred by finding that he failed to show under the standard set by Gilbert v. Durand Glass Mfg. Co., Inc., 258 N.J.Super. 320, 609 A.2d 517 (App.Div.1992), the existence of an implied oral policy requiring warning prior to termination. Gilbert requires, that in order to establish that such a verbal policy exists, the employee must show:
1. The policy was pervasive and company-wide;
2. The pronouncements were an accurate representation of policy;
3. The pronouncements were authorized to be made; and
4. The employees had a reasonable expectation that the policy would apply to them.

[Id. at 331, 609 A.2d 517.]
Plaintiff claims that viewing the evidential materials presented in the light most favorable to him would permit a rational fact finder to resolve the alleged dispute in his favor. Brill, supra, 142 N.J. at 523, 666 A.2d 146. As a result, plaintiff argues his claim should have at least survived summary judgment. Plaintiff's argument is sound.
Plaintiff concedes that he was hired as an at-will employee by Palnut with no written contract. In addition, plaintiff concedes that while employed at Palnut, he never received a written form of defendants' policy regarding discipline or termination. Plaintiff does, however, offer evidence in the form of his own testimony and the testimony of other Palnut employees that, at least prior to the creation of the manual alleged by defendants to describe their policy, an oral policy existed at Palnut by which no employee would be terminated without first receiving a warning.
Plaintiff contends that "[e]veryone knew and understood that [warnings prior to termination] was both the policy and the practice of the Company [Palnut]." Thus, viewing the evidence in a light most favorable to plaintiff, he sufficiently showed the existence of a genuine factual issue that a policy requiring warnings prior to termination did exist at Palnut at one time.
Whether (1) a policy manual created by TransTechnology, having only a very limited distribution, which stated that employees could be fired at-will without cause and (2) a speech made to employees by Palnut's president to the effect that if "you're not doing your job, you're going to lose your job," were both sufficient to modify the oral policy claimed to have existed by plaintiff, created factual issues best determined at a trial. See Woolley v. Hoffmann-LaRoche, Inc., 99 N.J. 284, 491 A.2d 1257, modified 101 N.J. 10, 499 A.2d 515 (1985) and Preston v. Claridge Hotel & Casino Ltd., 231 N.J.Super. 81, 85-86, 555 A.2d 12 (App.Div.1989).
For these reasons, the dismissal by way of summary judgment of plaintiff's cause of action set forth in the Second Count of his complaint is reversed and the matter is remanded for trial on that issue.
Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.